1.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Damien Shontell Hewlett
v.                                    Case No. 22-CV-1376
Jason Hill, Zachary Lange

## Plaintiff's Declaration

1. On the date of 9-19-2022 I Damien Shontell Hewlett was an inmate at Waupun Correctional Institution.

2. On date 9-19-2022 I was housed in the cell #B-217 on B-Range Upper in the Restrictive Housing Unit.

3. During Second Shift Correctional Officer Zachary Lange was doing night time medication round.

4. As Correctional Officer Zachary Lange had made it to my door I had notified him that I was suicidal.

5. After I told Correctional Officer Zachary Lange that I was suicidal he walked away from my cell and left me unattend-

2.

ed with suicidal ideoligies running through my mind.

6. Correctional Officer Zachary Lange did not have his body worn camera on at this point and I know this because the green and red lights on his body camera were not both illuminated to indicate that both audio and video were recording.

7. At the beginning of B-Range Upper there is a sign posted that does "direct" for Correctional Officer's to turn on their Body Worn Camera's.

8. As Correctional Officer Zachary Lange was leaving my cell door I had began to selfharm by slamming my head against the celldoor.

9. A man who was housed in the cell next door to me, in the cell #B-218, whom I only knew as Inmate-Carter, had told Correctional Officer Zachary Lange "that man just said he suicidal. And Correctional Officer Lange responds to Inmate-Carter stating "He'll be okay".

3

10. Correctional Officer Zachary Lange then had proceeded to walk further down range and had left off of B-Range-Upper.

11. I had pressed my Emergency call button at this time to notify staff that the Correctional Officer Zachary Lange had walked off on me after I just told him I was suicidal, and of my injury from self harming by banging my head on the cell door.

12. The officer in the bubble had came on the Emergency call button intercom and said to me "glad to hear your alive".

13. Some time later Correctional Officer's Zachary Lange and Jason Hill arrived at my cell door # B-217 upper B-Range.

14. Neither, CO-Jason Hill nor CO-Zachary Lange had their body worn cameras on as actively recording audio and video with both red and green light's not being illuminated, indicating they were not on.

15. They did intimidate me, bully me, harass me,

4

and antagonize me while they were at my cell #B-217.

16. Correctional Officer Jason Hill, with Zachary Lange at his side, had looked at the injury I endured from slamming my head against the cell door and had said to me "that's it?"

17. I then told both officer's Lange and Hill to pull me out and place me on observation status. For I was suicidal and going to kill myself with a sheet.

18. At this point Correctional Officer Hill had literally said to me "Your Bitch Made".

19. I was appalled at what Correctional Officer Jason Hill had said to me. And I had asked Jason Hill if he really had just called me a Bitch?

20. At which Jason Hill say's to me "Yah, and I don't care about your fears of me".

21. At this point I told officer Jason Hill that him and Correctional officer Zachary Lange should turn their Body Camera's on.

5

22. Neither Jason Hill nor Zachary Lange moved to turn their body worn camera's on.

23. At that point Jason Hill say's to me "We don't care if our camera's are'nt on and we don't care about you either, do you think me, co-Lange, or the officer in the bubble care if you live or die, you could kill yourself tonight and nobody will care."

24. At this point I had lost it again and began self harming right infront of both officer's Jason Hill and Zachary Lange by slamming my head against my cell door window.

25. At this time Jason Hill make's another cruel remark to me by saying "maybe we'll come back when your black and blue, or on the brink of death, bleeding out."

26. Both Correctional Officer's Zachary Lange and Jason Hill had than walked away from my cell as I was self harming, in a mentally distraught and unstable, suicidally idealistic mindframe.

27. I had continued to unravel mentally and was still banging my head on the door, but that wasn't going to end my life so I than used sharp edge a toothpaste tube to try and cut my left arm, but it wasn't cutting as good as I wanted, and so I made a noose, out of my sheet, tied it round my neck as tight as I could until I had lost consciousness.

27. Third Shift D.O.C employee's had found me in cell #B-217 with my forehead split open, cut to my left arm, and in and out of consciousness due to the noose around my neck.

28. The Wisconsin Division of Adult Institutions-Policy And Procedures-DAI Policy# 500.70.25 (V) (C) (1). States:- Any staff who discovers an inmate attempting self-harm or suicide shall notify security staff or other staff available nearby. Security staff shall survey the scene, secure the area, and alert other staff to call medical personal, security back-up and a security supervisor.

7

29. Jason Hill was aware that I was self harming by beating my head on the door, and had requested to be placed on Observation Status for I was suicidal. But he did not follow Protocol and adhere to following DAI Policy #500.70.25(V)(C)(1) to ensure my safety.

30. Zachary Lange was aware that I was suicidal for I told him when he was doing medication pass, requested to be placed on observation status, and he knew I was self harming because I was beating my head on the door infront of him. But he did not follow Protocal and adhere to following DAI Policy #500.70.25(V)(C)(1) to ensure my safety.

31. When third shift officer's had cut the noose from around my neck, put me in a wheel chair, and wheeled me down B-Range, and took me to the nurses station. I was evaluated by Nurse Ann M. York.

32. During that evaluation Nurse Ann M. York describes the injury to my forehead being 3 cm X 3 cm lump with a 2.5 cm X .8 cm abrasion, and the injury to my left fore-

8

arm as being an abrasion that's 4 cm in length x 2 cm in width.

33. During the assessment by Ann M. York on 9-19-22, Captain Scott Kinnard had taken pictures of my injuries.

34. I had actually attempted suicide by taking an overdose amount of tylonel on date of 9-16-22, just three days prior to the suicide attempt on 9-19-2022.

35. In Incident Report #CO 531110 Justin L. Thomsen does state verbatim "Once back to the cell front Captain Kinnard and COII Reynolds had gotten I/M Hewlett to comply to place restraints on but the sheet around his neck became so tight and knotted around I/M Hewlett's throat he was unable to remove it himself. B217 was called open and I gained head control of Hewlett placing my left hand over his eyes and forehead and placing my thumb on his chin under his bottom lip tipping his head back as COII Bittner restrained the left arm and COII Marwitz restrained the right arm bicep. I/M Hewlett was beginning to lose consciousness as COII Reynolds cautiously but

9

hastily cut the sheet from I/M Hewlett's neck."

36. Jason Hill was a part of the cell extraction team on 9-16-22 that had extracted me from my cell to place me on suicide observation status for the overdose amount of tylonel that was consumed 3 day's prior to the suicide attempt on 9-19-22 of which is the subject of this lawsuit.

37. On 9-16-22, during the cell extraction Jason Hill had endured a minor injury to his lip when he had ran into the back of Plaintiff's head, before slamming the Plaintiff on range while he was restrained by hand-cuffs and shackles.

38. Due to that incident between Hill and I on 9-16-22 I did fear for my safety around Hill. And so I had been showering on 9-19-2022 and asked if any other officer, but Hill, could take me to my cell from the shower, and had made it clear that I feared for my life around CO-Hill due to how he had slammed me on 9-16-2022. And that is why Jason Hill had made the remark of "I don't care about your fear's of me" on 9-19-2022, when Hill and

10

Lange were at my door B-217 on the night that I was banging my head on the door, cut my left arm, and hung myself as a way to commit suicide.

39. Defendant Zachary Lange had "lied" when asked the Interrogatory Question #3 of "Did the plaintiff notify you that he was suicidal while you were doing PM med-pass on B-Range upper on the date of 9-19-22?", Lange had responded alleging "Plaintiff did not tell me he was suicidal. If he had, I would have reported it to my supervisor." And therefore that's a lie that Lange has told for I "DID" notify Lange that I was suicidal, and Lange "DID NOT" notify anybody.

40. Zachary Lange when asked Interrogatory Question #4 of "Was your body worn camera on as you were working B-Range upper during second shift on the date of 9-19-22?", Lange "doesn't" answer yes or no, but uses a play on words to avert from answering the interrogatory and gives an excuse instead.

41. Zachary Lange lied in his response to the Interrogatory Question #8 of "Did you say "he'll be okay" after another inmate told you that Plaintiff had said

11

he was suicidal?"

42. I asked Zachary Lange the Interrogatory Question #9 of "When you and CO-Hill were at the Plaintiff's door on 9-19-22, what was said, and what exactly transpired?" And Lange had "NOT" answered this interrogatory as to "what was said", and averts from answering by saying "I was at Plaintiff's cell for the evening medication pass and briefly later at another time with Defendant Hill. There was no incident." But the thing is that I didn't ask was Lange at my cell or was there an incident in the Interrogatory #9.

43. In the Interrogatory Question #5 I had asked the Defendant Jason Hill "What was the reason that you and CO-Lange were at the Plaintiff's door to begin with?", and CO-Hill averts from answering this Interrogatory #5 by alleging "I do not recall any incident occuring that was the reason we were at the cell for that brief of time." But Jason Hill and Zachary Lange were at my door, but now Hill alleges he don't know why they came on range and went directly to my cell, and then left off range with no other stops, and that's clear on camera footage

of B-Range Upper that's available evidence in this lawsuit.

44. Zachary Lange does lie and literally contridicts hisself in his Declaration under oath when he states verbatim at Langes' Declaration Point #13 "I do not recall specifically what was said during that time or why we stopped at Hewletts' cell, but I know that correctional officer Hill did not make any of the above statements (or similar statements) to Hewlett!" And therefore it's <u>impossible</u> for Lange to <u>NOT</u> recall what was specifically said while at the Plaintiffs', and than within that same instance and sentence all of a sudden by miracle <u>know sopposedly</u> that Hill didn't make said statements alleged in this complaint. Lange can either recall what was said while at Hewletts' Door or he can't recall, but it can't be both!

45. Jason Hill does <u>NOT</u> recall what was said while Hill and Lange were at my cell#B-217 on date of 9-19-2022.

46. Zachary Lange does <u>NOT</u> recall what was said while Lange and Hill were at my cell#B-217 on date of 9-19-2023

13

47. Jason Hill lied in his Declaration under oath and this is based upon the facts that Hill's Declaration at #7 does literally contridict #12. At #7 Hill says verbatim "I do not recall what was said during that time or why we stopped at Hewlett's cell." And than quite suddenly Hill has a miracoulous recollection of the events when Hill in his Declaration at #12 says verbatim "I did not make any of the above statements (or similar statements) to Hewlett. I ~~did not~~ bully or harass Hewlett. I would never make statements like that to an inmate". And therefore it's not possible for Hill to "not recall" what transpired at my cell door in Hill's Declaration at #7, and than supposedly recall in his Declaration at #12 what he did and or didn't say while at my door. Hill can either recall or he can't, but it can't be both.

48. The three people Arsenio Akkins, De'Angelo D. Carter, and myself, The Plaintiff, Damien Shontell Hewlett, DO remember and recall what was said during exchange's between myself and both officers Hill and Lange when they were at my cell B-217 on night of 9-19-2a of which is the subject of this lawsuit.

14

49. On 9-22-22 ~~[scribbled]~~ Dr. Brooke A. Lewis had filed the Incident Report #0124671, and had stated verbatim "On the above ~~[scribbled]~~ stated date and approximate time, I, Dr. Lewis (Psychological Associate) was conducting a crisis-related contact with PIOC Hewlett (559455). During this contact, Mr. Hewlett reported to me that Officer Lang and Officer Hill have gone to his cell ~~[scribbled]~~ and taunted him without their body camera's turned on. He also reported that they took ~~[scribbled]~~ away his food. He also claims that Officer Hill "falsified reports." End of report.

50. Due to this incident i've dealt with anxiety at a heightened state, have suffered nightmares that wake me out of my sleep drenched in sweet, and left me sleep deprived.

51. Due to the heightened levels of anxiety along with the nightmares, I've been placed on the following medication's of Clonidine, Hydroxyzine, and Buspirone to try to get the psychological issues I am enduring under control.

52. I had suffered bad side effects from these

15

52. meds I was placed on, such as skin rash, blurred vision, dizzyness, headaches, and chest pains.

53. I had to work with the psychological services unit through work sheets in order to try to get the anxiety and nightmares in check.

54. Although the nurse charted the injury to my left inner forearm as an abrasion, the injury is much more than an abrasion, and is a cut and or gash, that had left a permanant scar that a jury or anybody who would look at it would be able to determine that the injury is much more than an abrasion. And the injury was bleeding and so the nurse had falsified that part of my medical records.

I, Damien Shontell Hewlett, under penalty of perjury 28 U.S.C. 1746, I declare that the above statements are true and correct.

Signed: Damien Shontell Hewlett
Dated: 11-15-2023