UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DAMIEN S. HEWLETT,

    Plaintiff,

  v.

Case No. 22-cv-1376

JASON HILL and ZACHARY LANGE,

    Defendants.

**PLAINTIFF'S AMENDED MOTION IN LIMINE – Number 19**

Plaintiff Damien Shontell Hewlett, by his counsel, pursuant to the Court's April 19, 2024, Pretrial Order (Dkt. # 56), and L.R. 16(b), and after conferring with counsel for the Defendants on September 23, 2024 files this Amended Motion in Limine as follows:

**Motion in Limine – Number 19**

Plaintiff requests a spoilation instruction as to the blade(s) and/or cutting instruments used, sheets found around Mr. Hewlett's neck, body camera, and photographic evidence that was not preserved nor produced by Defendants. Plaintiff contends that the Defendants at one time possessed media evidence including body camera video and photographs all of which were inexplicably destroyed. As such, Plaintiff request that this court allow for an adverse inference instruction at the jury trial scheduled for October 24, 2024.

On September 23, 2024, the parties met and conferred regarding the outstanding discovery, and it was confirmed that the aforementioned media discovery is not available.

### A. Missing Body Camera Footage of Defendant Jason Hill

In DOC0103, Defendant Jason Hill wrote an incident report on September 19, 2022, confirming that he worked as a "1st shift seg 4 officer" and noted in this report that, "Let it be known my BWC 1-RHU4 was activate the entire time I was on the range, Captain Rymarkiewicz was notified EOR." *Declaration of Kimberley Cy. Motley* at Exhibit A

> DESCRIPTION OF INCIDENT:
> on the above date and time I officer Hill was working my assigned post as the 1st shift seg 4 officer, When I was performing my duties and conducting rounds on lower A-range and talking to Inmate Milton,Tyler #596157 who resides in cell A-113, during our conversation I over heard Inmate Odom, Rickey #189125 who resides in A-111, yelling out of his cell door to Inmate Henry, Marcus #280702 who resides in A-106, about trying to coming up with a plan to get me removed from my assigned job and fired i then heard an unknown inmate yell from down range that they have an idea and stated that I physically assulted him and attempted to kill him the above inmates excluding inmate Milton stated they will discus a plan later. Let it be known my BWC 1-RHU4 was activate the entire time I was on range, Captain. Rymarkiewicz was notified EOR
>
> PHOTOS/SCANNED DOCUMENTS ATTACHED
> PHOTO DOCUMENT TYPE    PAGE #    IMAGE
>
> DOC0103

Despite Defendant Hill's incident report of September 19, 2022, in which Plaintiff Hewlett was also named, Defendants have not provided any body camera evidence that was taken on September 19, 2022. *See* Exhibit A

| OFFENDERS INVOLVED | | |
|---|---|---|
| OFFENDER NAME | DOC # | INVOLVEMENT TYPE |
| HENRY, MARCUS M | 280702 | Principal |
| HEWLETT, DAMIEN S | 559455 | Principal |
| MILTON, TYLER L | 596157 | Principal |
| ODOM, RICKEY Jr | 189125 | Principal |

*Id*

### B. Missing Photographs Taken By Captain Kinnard of Damien Hewlett

Additionally, as noted in DOC Bates 0098, which is an incident report for the September 19, 2022, matter, Sergeant Thomsen confirms that there were photographs taken of Mr. Hewlett. In the report, Sergeant Thomsen writes, "Captain Kinnard took photos of lacerations on (the) neck, head, and also right forearm where I/M Hewlett admitted to trying to cut himself prior to hanging himself." *Motley Decl.* at Exhibit B

> room where RN York began her health assessment. Captain Kinnard took photographs of lacerations on neck head and also right forearm where I/M Hewlett admitted to trying to cut himself prior to hanging himself. I/M Hewlett was then taken to the strip cell and given a kilt as

Despite this assertion, Defendant's have not provided any photographs of Plaintiffs injuries. On September 24, 2024, September 18, 2024, and September 11, 2024, Plaintiff inquired about the missing photographs. *Motley Decl.* at Exhibits C, D, and E. Defendant's shared with counsel, on September 18, 2024, for the first time, a letter indicating that the statement in Sergeant Thomsen's incident report pertaining to photographs being taken was "made in error." *Motley Decl.* at Exhibit F.

### C. Missing Physical Evidence of the Blade and/or Sharp Object and Sheet Used by Damien Hewlett on September 19, 2022

Additionally, Plaintiff contends that the Defendants at one time possessed physical evidence such as a blade and/or sharp object and sheet used by Plaintiff to harm himself. Upon information and belief, the sheets and blade(s) and/or cutting object were discarded. On September 24, 2024, Plaintiff's counsel reached out to Defendants requesting confirmation of the existence of such objects and their whereabouts. In Sergeant Thomsen's report he notes that, "There was a white object wrapped around his neck it appeared to be a sheet." *See* Exhibit B.

Plaintiff seeks an adverse inference instruction as it relates to any physical evidence, video and photographic evidence that was destroyed by Defendants. See Miksis v. Howard, 106 F.3d 754, 762-763 (7th Cir. 1997) (party seeking adverse inference must prove that other party intentionally destroyed evidence in bad faith). The Seventh Circuit "requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence" to support a missing or destroyed evidence instruction. Spesco, Inc. v. General Elec. Co., 719 F.2d 233, 239 (7th Cir. 1983); see also Adkins v. Mid-America Growers, Inc., 141 F.R.D. 466, 473 (N.D. Ill. 1992) ("In cases where evidence has been intentionally destroyed, it may be presumed that the materials were

relevant."). If the facts are not in dispute, the court ordinarily will decide the sanction for an intentional and bad faith spoliation, which might include an instruction with an inference such as that set forth in this instruction.

In order for Plaintiff to prove the destruction of evidence for his federal claims, he must have evidence that the Defendant destroyed the evidence in "bad faith." See *Miksis v. Howard*, 106 F.3d 754, 762-763 (7th Cir. 1997) (party seeking adverse inference must prove that other party intentionally destroyed evidence in bad faith). Proving "bad faith," according to the Seventh Circuit, requires only "a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence" to support a missing or destroyed evidence instruction.

*Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983); see also *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 473 (N.D. Ill. 1992) ("In cases where evidence has been intentionally destroyed, it may be presumed that the materials were relevant."). If the facts are not in dispute, the court ordinarily will decide the sanction for an intentional and bad faith spoliation, which might include an instruction with an inference such as that set forth in.

Under Wisconsin law, the "primary purpose behind the doctrine of spoliation is two-fold: (1) to uphold the judicial system's truth-seeking function; and (2) to deter parties from destroying evidence. *Morrison v. Rankin*, 2007 WI App 186, ¶ 16, 305 Wis. 2d 240, 251, 738 N.W.2d 588, 594 (citing *Insurance Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI App 15, ¶ 16, 269 Wis. 2d 286, 674 N.W.2d 886 (Ct. App. 2003), aff'd, 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462.

In making a spoliation determination, the court should consider whether the party responsible for the destruction knew or should have known at the time of destruction that: (1) "that litigation was a distinct possibility," and, (2) the evidence "would constitute evidence relevant to the pending or potential litigation." *Morrison*, 2007 WI App 186, at ¶ 16 (internal citations omitted). Here, it was clear that incident involving Mr. Hewlett would prompt an investigation and that such evidence should have been preserved.

Indeed, Wisconsin courts have found that destroying evidence to influence the outcome of litigation can constitute "egregious conduct" warranting dismissal of a claim or a directed verdict. See, e.g., *Garfoot*, 599 N.W.2d at 419 (reaffirming prior holding that "dismissal as a sanction for destruction of evidence requires a finding of egregious conduct, which, in this context, consists of a conscious attempt to affect the outcome of litigation or a flagrant knowing disregard of the judicial process."); *Morrison*, 2007 WI App 186, ¶ 27. In *Morrison*, the court entered a directed verdict against a physician in a medical malpractice case because the physician defendant destroyed medical records that were central to the issue of proving whether there had been informed consent. Id. at ¶¶1-2.

Plaintiff has been significantly prejudiced by the destruction of the video evidence, photographs, and physical evidence. All of this evidence is critical to Plaintiffs claim that the Defendants Failed to Protect him on September 19, 2022. Plaintiff had no reason to believe that the physical evidence, photographs, and video evidence would be destroyed, and all of this evidence are the most important pieces of evidence.

Respectfully submitted this 24th day of September 2024.

3

Case 1:22-cv-01376-WCG    Filed 09/24/24    Page 5 of 6    Document 87

5

**MOTLEY LEGAL SERVICES**

By: *s/ Kimberley Cy. Motley*
    Kimberley Cy. Motley
    P.O. Box 1433
    Matthews, NC 28106
    Telephone: (704)763-5413
    Email: kmotley@motleylegal.com